IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW KINDER, ) Civil No. 04-6350-JO
 )
       Plaintiff, )
 )
   v. ) OPINION AND ORDER
 )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION, )
 )
       Defendant. )

    Mark A. Manning
    CRAM HARDER WELLS & BARON PC
    474 Willamette Street, Suite 200
    Eugene, OR  97401

     Attorney for Plaintiff

    Neil J. Evans
    UNITED STATES ATTORNEY'S OFFICE
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

Daphne Banay
Lucille G. Meis
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA  98104-7075

   Attorneys for Defendant

JONES, Judge:

Plaintiff Andrew Kinder seeks judicial review of the final administrative decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act.  *See* 42 U.S.C. §§ 401-433.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  In the course of preparing her defense, the Commissioner of Social Security concluded that it would be appropriate to remand the case for further administrative proceedings.  Following a careful review of the record, this court holds that the case must be remanded for further proceedings under sentence four of 42 U.S.C. § 405(g), and therefore grants defendant's motion (#21) for remand.[1]

---

[1] In Shalala v. Shaefer, the Supreme Court held that the fourth and sixth sentences of 42 U.S.C. § 405(g) set forth the "exclusive methods" for remanding a case to the Commissioner. 509 U.S. 292, 296 (1993) (citing Melkonyan v. Sullivan, 501 U.S. 89, 99-100 (1991)); *see also* Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002) (citing Shaefer, 509 U.S. at 296).  A "sentence four" remand is a final judgment on the merits, so that the district court relinquishes jurisdiction over the case.  *See* Forney v. Apfel, 524 U.S. 266, 269 (1998) (citations omitted) (holding that judgment following a "sentence four" remand is final and appealable); *and see* Akopyan, 296 F.3d at 854 (citing Shaefer, 509 U.S. at 297).

2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Mr. Kinder's alleged disability started on March 1, 1997. Plaintiff's first DIB claim was denied on March 31, 1999. This court is reviewing the denial of plaintiff's second application for DIB, which he filed on May 9, 2001. Since his alleged onset date, plaintiff maintains that he cannot engage in any substantial gainful activity due to a combination of physical and mental impairments, including lumbar degenerative disc disease, opiate dependence, marijuana dependence, and dysthymia. (Def.'s Br. (# 22) at 3.) His second application for DIB was denied, both initially and upon reconsideration. Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ). The first hearing was held on August 13, 2003, and a supplemental hearing was held on March 10, 2004. At both hearings plaintiff was represented by counsel. Plaintiff appeared and testified at the first hearing; as did plaintiff's lay witness, Minnie Kinder, his wife, and a vocational expert (VE). Tr. 630-686.[2] At the supplemental hearing, plaintiff was represented by counsel and testified again, as did another VE. Tr. 687-735. On June 24, 2004, the ALJ issued an unfavorable decision denying plaintiff's application for DIB, finding that plaintiff was not disabled because he could perform other work existing in significant numbers in the national economy. Tr. 35. The ALJ's decision became the final decision of the Commissioner on September 17, 2004, when the Appeals Council declined review. Tr. 9. Plaintiff now seeks judicial review of the Commissioner's decision.

---

[2]Citations to the official transcript of record filed with the Commissioner's Answer (# 8) on February 25, 2005, are referred to throughout as "Tr."

3 - OPINION AND ORDER

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). "Substantial evidence means more than a scintilla but less than a preponderance." Andrews, *supra*, 53 F.3d at 1039. The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). In reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Andrews, *supra*, 53 F.3d at 1039-40.

The plaintiff carries the initial burden of showing that he is disabled. 42 U.S.C. § 423(d)(5); Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). When a plaintiff successfully establishes his or her inability to do prior work, the burden shifts to the Commissioner to show that the plaintiff can perform other substantial gainful activity, considering the plaintiff's age, education and work experience. Delorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

The decision whether to remand a case for further proceedings or to award benefits is within the discretion of the court. Harmon v. Apfel, 211 F.3d 1172, 1177 (9th Cir. 2000) (as amended); *see* 42 U.S.C. 405(g). The award of benefits is appropriate when no useful purpose would be served by further administrative proceedings, or when the record has been fully

developed and there is not sufficient evidence to support the ALJ's conclusion. *See* Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). When outstanding issues must be resolved, the appropriate remedy is remand for further proceedings. *See* Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003).

## DISABILITY ANALYSIS AND A SUMMARY OF THE ALJ'S FINDINGS

The Commissioner utilizes a five-step sequential evaluation process to determine whether a person is disabled within the meaning of the Social Security Act, as required by 20 C.F.R. § 404.1520. The plaintiff bears the burden of proof at steps one through four. *See* Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to identify jobs existing in significant numbers in the national economy that the plaintiff can perform given his residual functional capacity (RFC), age, education, and work experience. *See* Id; 20 C.F.R. § 404.1560(c)(2). Each step is potentially dispositive. "If at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be excepted to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

First, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since the onset of his alleged disability. Tr. 20, 34; *see* 20 C.F.R. § 404.1520(b).

Second, the ALJ concluded from medical evidence that the plaintiff suffers from the following: (1) lumbar degenerative disc disease, (2) opiate dependence, (3) marijuana

dependence, and (4) dysthymia. Tr. 34. The ALJ found these impairments to be "severe" based on the requirements of 20 C.F.R. § 404.1520(c). Id.

Third, the ALJ found that although severe, plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Id; *see* 20 C.F.R. §§ 404.1520(d).

Fourth, considering the physical and/or mental limitations that affect plaintiff's ability to perform work-related tasks, the ALJ determined that plaintiff has an RFC to:

> sit, stand, walk, and sit/stand, for up to 4 hours during an 8 hour workday with normal breaks and a sit/stand option; he is able to do intermittent bending, squatting, twisting and reaching above the shoulder level, occasional climbing and frequent crawling, but is mildly limited when driving automotive equipment. His ability to do repetitive grasping and fine manipulation is not impaired. Due to the effects of opiates and/or mental impairments, the [plaintiff] should avoid detailed and complex tasks, and is moderately limited in his ability to deal with the general public and to set realistic goals independently.

Tr 34-35; *see* 20 C.F.R. § 404.1520(e). The ALJ found that plaintiff's RFC limits him to "light" or "sedentary" level work. Tr. 35. The ALJ determined that plaintiff's past relevant work included positions as a forklift operator and a shipping/receiving clerk. Tr. 33; *see* 20 C.F.R. § 404.1565. The VE testified that the Dictionary of Occupational Titles (DOT) characterizes both of plaintiff's past relevant work positions as "medium" semiskilled work. Accordingly, the ALJ found that plaintiff's medically determinable limitations prevents him from performing the physical and mental demands of his past relevant work. Tr. 35; *see* 20 C.F.R. § 404.1520(f).

In step five, the ALJ found that the plaintiff could perform other work that the DOT classifies as light or sedentary and that exists in significant numbers in the national economy such as cashier II, ticket seller, or sedentary assembler. Tr. 35.

Additionally, the ALJ found credibility issues with plaintiff and substantial evidence of secondary gain. The ALJ noted that plaintiff claimed he stopped working due to a physical inability to continue working, yet during testimony the plaintiff confirmed that he accepted an early retirement package (Tr. 639), and thus the ALJ concluded that plaintiff "did not stop working because he was medically *unable* to work, but because of company downsizing which enabled [plaintiff] to take a severance package." Tr. 27 (emphasis in original). The ALJ also found "inconsistencies indicative of exaggeration of symptoms, apparently for the secondary gain motivation of obtaining and/or continuing Workers Compensation income initially, then later relative to seeking Social Security benefits." Id. In support of this contention the ALJ utilized the notes from some of plaintiff's treating physicians, specifically, treating orthopedist Dr. Peter Taylor, who stated that the patient exhibits "significant non-organic pain behavior . . ." (Tr. 340), and "I am always concerned about patients when I don't seem to be able to get a grasp of what their problem is and that there is some secondary gain phenomenon present." Tr. 343. Additionally, during a Workers Compensation exam conducted on April 9, 1999, the examining physicians, Doctors Frank Paudler and Edward Hoffman, noted that "an inspection of [plaintiff's] hands reveal hands which are heavily calloused with staining and numerous excoriations in the fingers and palms indicating heavy manual labor" while the plaintiff "only admits to doing some housework as the reason for the appearance of his hands." Tr. 424.

## I. THE ALJ PROPERLY REJECTED CERTAIN MEDICAL TESTIMONY

Plaintiff argues that the ALJ failed to provide adequate and appropriate reasons to discredit the opinions of Doctors Kurlychek, Johnson, and Fredrick, and therefore their medical opinions should be credited as a matter of law. Plaintiff further argues that, once credited, he has

7 - OPINION AND ORDER

established that he is disabled and a remand for immediate payment of benefits is required. For the following reasons this court disagrees with plaintiff's contentions.

The law distinguishes between the opinions of treating and examining physicians by assigning greater weight to the opinions of treating physicians because they have a greater opportunity to observe a patient over time. Rodriguez, *supra*, 876 F.2d at 761-762. An ALJ may not reject a treating physician's opinion unless the ALJ "makes findings setting forth specific and legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). If a treating physician's opinion is uncontroverted, then the ALJ must provide "clear and convincing" reasons to correctly reject such opinion. Rodriguez, *supra*, 876 F.2d at 761-762. In regards to examining physicians, if an opinion is contradicted by another physician's opinion, the ALJ may correctly reject the opinion by providing specific and legitimate reasons that are supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). If an examining physician's opinion remains uncontroverted, then the ALJ must provide clear and convincing reasons in order to properly reject the opinion. Id. at 830. In reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence. Sample, *supra*, 694 F.2d at 642.

  **A.** **The ALJ Correctly Rejected the Opinion of Robert Kurlychek, Ph.D.**

Plaintiff received a psychiatric examination from Robert Kurlychek, Ph.D. on January 7, 2003. Tr. 570-579. During the exam plaintiff stated that he "feels worn-out and blue and most of the time he feels downhearted and depressed." Tr. 573. Yet Dr. Kurlychek noted that plaintiff "does not have an excessive degree of anxiety and his depression level appears to be average when compared with other pain patients." Id. Also in his report, under the heading "Test

Results and Interpretations," Dr. Kurlychek wrote "Mr. Kinder sees himself as being in [sic] good in general and about the same as last year." Id. Additionally, using the Millon Behavioral Medicine Diagnostic (MBMD), Dr. Kurlycheck found "indicators of significant depressive features." Id. Yet under the "Conclusions and Recommendations" heading Dr. Kurlychek's diagnostic impressions are: post-laminectomy lumbar syndrome and chronic pain from lower extremity radiculitis. The only allusion to a possible depression diagnosis occurs under the "Discussion" heading where he states that plaintiff is "experiencing significant depression," Tr. 574, which contradicts his earlier assessment that plaintiff's depression levels appear to be about average when compared with other pain patients. Furthermore, Dr. Kurlychek noted that "[plaintiff] stopped taking his anti-depressant medications . . . ." Id. On November 10, ten months after the January examination, Dr. Kurlychek, without further consultation with plaintiff, stated that plaintiff suffers from "major depression." Tr. 611.

The ALJ provided clear, convincing, specific, and legitimate reasons in refusing to assign significant weight to Dr. Kurlychek's opinions. Tr. 31-32. The ALJ noted that Dr. Kurlychek's assessment of major depression was made ten months after the first assessment, without examining the plaintiff in the interim. Tr. 31. Additionally, the ALJ states that the November opinion "is not supported by Dr. Kurlychek's own report which is fairly benign, without evidence of cognitive impairment, or basis for such things as a need for 'special supervision,' or with the full record." Id. The ALJ noted the contradiction in Dr. Kurlychek's opinions by stating "when [the Dr.] actually evaluated the [plaintiff], he did not assess any diagnosis of depression, or other mental impairment," yet months later he states that the plaintiff suffers from major depression. Id. The ALJ also "assumed that Dr. Kurlychek accepted

9 - OPINION AND ORDER

[plaintiff's] subjective complaints at face value" but the ALJ found significant credibility issues with plaintiff, and therefore assigned limited weight to evidence based on plaintiff's subjective complaints.  Id.  Finally, the ALJ assigned minimal weight to the second opinion of Dr. Kurlychek because "it is clear that he has been solicited as, and has become an aid for the claimant . . . rather than remaining an objective health professional," therefore, "his is not an objective opinion." Id.  An ALJ may reject a doctor's opinion when that doctor has assumed the role of advocate.  Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

Regardless of the ALJ's contention that Dr. Kurlychek's opinion was a solicited product, the ALJ properly provided alternative clear, convincing, specific, and legitimate reasons, logically flowing from the evidence, for assigning minimal weight to the opinions of Dr. Kurlychek.

### B. The ALJ Correctly Rejected the Opinion of Bruce Johnson, M.D.

The Plaintiff was examined by Bruce Johnson, M.D., five times in 2001, with the final examination occurring on December 20, 2001.  As a result of the final examination, Dr. Johnson opined that plaintiff suffered from a combination of mild, moderate, and marked mental limitations.  Tr. 531-533.

The ALJ correctly assigned limited weight to the medical opinions of Dr. Johnson and provided clear, concise, specific and legitimate reasons for doing so.  The ALJ bases his decision on several reasons.  The ALJ noted that "the assessment is not supported by Dr. Johnson's own treatment notes . . . ."  Tr. 30.  During their first meeting Dr. Johnson wrote that when "the [plaintiff] first came to the clinic . . . he was extremely depressed and afraid of killing himself, but has gotten better since then . . . ."  Tr. 492.  The diagnosis resulting from this meeting was

"severe depression, probably chronic . . . ." Tr. 493. During follow up meetings Dr. Johnson noted that "[plaintiff] feels that his mood is improving . . . and if anything, [plaintiff] says that things are a little better than they were" (Tr. 490), and later, "[o]verall, though, his mood doesn't seem as bad as I've seen it." Tr 488. In the final meeting between them, Dr. Johnson noted that "[plaintiff's] mental condition has improved" and that he is at "his highest level of functioning since treatment began." Tr. 533. Yet throughout this period of time, Dr. Johnson's diagnosis remained unchanged despite the seemingly positive behavior exhibited by plaintiff. While this inconsistency, by itself, is not enough to warrant the ALJ's actions, the ALJ provided additional support for his decision. The ALJ also noted that Dr. Johnson's opinions are contradicted by the findings of Susan Horton, Ph.D., who was also treating plaintiff at this time, and the findings of Doctors Alan Javel and David Rowlett. Dr. Horton's diagnosis of August 20, 2001 stated that "[plaintiff] does not offer depression as a barrier to competitive employment," and that "[plaintiff's] ability to reason, understanding and memory, and sustain concentration and persistence . . . appears to be within normal limits. By [plaintiff's] description, his social interaction is restricted by his own choice." Tr. 484-485. On December 29, 2000, Dr. Javel diagnosed plaintiff with "slight depression" that was "within normal limits" and attributable to "a seasonal downturn of mood." Tr. 494. Dr. Rowlett noted on July 21, 2000, that plaintiff reported that he was doing better mentally, that the prescribed medication was sufficient to offer relief from his depressive symptoms and that there were no side effects. Tr. 497. During the follow-up visit on September 15, 2000, Dr. Rowlett observed that "[plaintiff] doesn't display any depressive symptomatology." Tr. 496. The ALJ also noted any depressive features suffered by plaintiff may be partly attributable to the actions of the plaintiff himself. Dr. Johnson wrote that

11 - OPINION AND ORDER

plaintiff is "sporadically taking medicines" or "not taking them properly" which led to an assessment of "[n]oncompliance" and "poor self-observing." Tr. 488. Furthermore, the ALJ used the plaintiff's own testimony from the supplemental hearing during which the plaintiff stated that his depression was most severe after the denial of his Worker's Compensation Claim, and that this period of time lasted for about four months, implying that since that time his mental state had improved somewhat. Tr. 702.

The ALJ's decision is a rational interpretation of the evidence. *See* Andrews, *supra*, 53 F.3d at 1039-40. The ALJ has provided specific, legitimate, clear and convincing reasons to assign limited weight to the medical opinions of Dr. Johnson.

### C.       The ALJ Correctly Rejected the Opinion of John Fredrick, M.D.

On January 23, 1999, Dr. John Fredrick performed a single psychological evaluation stemming from plaintiff's DIB claim. His diagnosis was that plaintiff did not meet all the criteria for major depression but did suffer from: depression, not otherwise specified; pain disorder; alcohol dependence, in sustained full remission; and cannabis abuse, in sustained full remission. Accordingly, Dr. Fredrick opined that plaintiff had a Global Assessment of Functioning (GAF) score of 50 (cannot keep a job and suicidal ideation). Tr. 389.

The ALJ declined to give the opinion of Dr. Fredrick controlling weight. The ALJ did so because "the record fails to demonstrate that the [plaintiff] was unable to sustain employment." Tr. 23. An ALJ may reject an opinion that is not supported by the findings of other doctors or when it is inconsistent with the plaintiff's activities. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Dr. Fredrick noted that plaintiff's "problems with pain and depression both stem back to 1989 when he had an accident as a forklift operator." Tr. 386. In the period of time

between the accident and the evaluation by Dr. Fredrick, plaintiff sought limited treatment, most of which primarily concerned his physical aliments. Furthermore, the medication that was prescribed to assuage plaintiff's mental condition was halted by plaintiff. Dr. Fredrick noted that "[plaintiff] has taken Zoloft in the past 100mg a day. He took it for about a year and it helped somewhat. He stopped taking it approximately two months ago. He has never been on any other psychiatric medication." Tr. 387.

Dr. Fredrick's opinions are not supported by the medical opinions of treating physician Dr. Clyde Carpenter, Susan Horton, Ph.D., or John Robinson, Ph.D. An ALJ may consider the consistency of an opinion with the record as a whole in determining the weight to give that opinion. 20 C.F.R. § 404.1527(d)(2). Plaintiff was examined by Dr. Carpenter on several occasions, beginning on July 14, 1998 and continuing to May 15, 2001, regarding plaintiff's spinal fusion operation and post-operation progress. On February 2, 1999, Dr. Carpenter cleared plaintiff for light-duty work. Tr. 465. Dr. Horton conducted a psychiatric exam of plaintiff on August 20, 2001. As part of her conclusion Dr. Horton wrote, "[m]edical notes refer to depression, but no psychiatric diagnosis is offered . . . . It would appear that [plaintiff] has a considerable secondary gain from his pain complaints." Tr. 484. Dr. Horton continued, "[i]t should be noted that [plaintiff] does not offer depression as a barrier to competitive employment, including self-employment . . . ." Tr. 485. Dr. Horton assigned a GAF score of 55 (moderate symptoms; flat effect and circumstantial speech, occasional panic attacks), which is an improvement over the GAF score that Dr. Fredrick assigned to plaintiff a year and a half earlier, implying that plaintiff's mental state had improved. Finally, Dr. Robinson examined plaintiff on September 6, 2001, and found that plaintiff suffers from mild depression. Tr. 538. Dr. Robinson

13 - OPINION AND ORDER

concluded that "[plaintiff] is, objectively, less disabled mentally than he claims . . . his mental impairments are "non-severe" by SSA standards." Tr. 547.

The ALJ provided specific and legitimate reasons for assigning limited weight to Dr. Fredrick's opinions. The decision to do so was based on a rational interpretation of substantial evidence in the underlying record. Moreover, Dr. Fredrick's opinions are unsupported by the medical opinions of several specialists who examined plaintiff after Dr. Fredrick, and thus his opinions are inconsistent with the record as a whole.

When the evidence is susceptible to more than one interpretation the ALJ's conclusions must be upheld. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The ALJ is not required to incorporate doctor opinions that were correctly discounted by the ALJ. Batson v. Commissioner, 359 F.3d 1190, 1197-1198 (9th Cir. 2004). I find that the ALJ properly rejected the opinions of Doctors Kurlychek, Johnson, and Fredrick.

## II. THE ALJ FOUND ISSUES OF CREDIBILITY WITH PLAINTIFF

The ALJ found the claimant to not be fully credible, based on substantial evidence found in the record. Resolving questions of credibility is solely a function of the ALJ. Morgan, *supra*, 169 F.3d at 599. After the plaintiff produces objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of pain, and there is not affirmative evidence suggesting that the plaintiff is malingering, then the ALJ may reject the plaintiff's testimony regarding the severity of the alleged pain by offering specific, clear, and convincing reasons for doing so. Smolen v. Chater, 80 F.3d 1273, 1281-1284 (9th Cir. 1996). The ALJ noted that a June 1997 Workers Compensation examination "failed to produce objective findings to substantiate subjective complaints." Tr. 21. Furthermore, the ALJ

considered the fact that plaintiff's Workers Compensation claim was ultimately denied as a factor that "reflects negatively on [the plaintiff's] credibility." Id.  During a second Workers Compensation examination conducted on April 9, 1999, Doctors Frank Paudler and Edward Hoffman found that plaintiff was capable of returning to light-duty, and that an "inspection of his hands reveals hands which are heavily calloused . . . indicating heavy manual labor."  Tr. 424. The ALJ also noted the findings of Susan Horton Ph.D., arising from an August 2001 examination, which stated that "it would appear that [plaintiff] has a considerable secondary gain from his pain complaints . . . ."  Tr. 484.  Dr. Horton continued that "the [plaintiff] appears to experience his difficulty as more incapacitating than the medical progress notes available to the present writer would indicate."  Tr. 485.  In fact, there are several comments by different physicians that noted plaintiff's inconsistent behavior throughout the record.  A January 8, 1998, physical RFC assessment noted that "on some examinations is [sic] has been felt that there was evidence of non-organic pain behavior."  Tr. 329.  The examiner continued, "the [plaintiff] is partially credible because the evidence in the file indicates the ability to do light work."  Tr. 333. On March 24, 1997, Dr. Peter Taylor stated "I am always concerned about patients when I don't seem to be able to get a grasp of what their problem is and that there is some secondary gain phenomenon present."  Tr. 343.  Dr. Harold B. Johnston, M.D. noted on March 9, 1999, that "[plaintiff] says he has concentration problems but ADL's and clinical findings do not support this . . . .  He is partially credible."  Tr. 395.

　　　　Accordingly, this court concludes that the ALJ provided specific and legitimate reasons based on substantial evidence in the underlying record for finding the plaintiff to be not credible.

## III. REMAND FOR FURTHER PROCEEDINGS IS NECESSARY

Remand is correct "'where additional administrative proceedings could remedy defects; but where judgement would only delay the receipt of benefits, judgement for the [plaintiff] is appropriate." Rodriguez, *supra*, 876 F.2d at 763 (quoting Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985)). "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able [plaintiff]." Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1278 (C.D. Cal. 1996).

The Ninth Circuit has articulated standards that this court should use "for determining when evidence should be credited and a immediate award of benefits directed." Harmon, *supra*, 211 F.3d at 1178. The court should credit evidence that was rejected improperly and remand for an immediate award of benefits if:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harmon, *supra*, 211 F.3d at 1178). In the end, however, it is within this court's discretion whether to remand for further proceedings or for an immediate awards of benefits. *See* 42 U.S.C. § 405(g); Benecke, *supra*, 379 F.3d at 590.

### A. Remand is Necessary Regarding Plaintiff's Lay Witness Testimony and Statements by Other Family Members.

"[L]ay testimony constitutes qualified evidence which the ALJ must address . . . ." Sprague v. Bowen, 812 F.2d 1226, 1231-1232 (9th Cir. 1987). Disregard of testimony given by non-medical sources violates the Commissioner's regulation that requires an ALJ to consider

16 - OPINION AND ORDER

observations by such sources as to the severity of plaintiff's impairment and as to how the impairment affects plaintiff's ability to work. *See* 20 C.F.R. § 404.1513(d)(4). An ALJ may not dismiss lay witness testimony solely because he found that the plaintiff was not credible. *See* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). If the ALJ wishes to discount the testimony of the lay witness, he must give reasons that are germane to each witness. Id.

The ALJ did not provide any reasons for accepting or rejecting the testimony provided by plaintiff's wife, Minnie Kinder, in the first administrative hearing. Tr. 671-683. Nor does the ALJ provide reasons for accepting or rejecting statements provided by family members found in the record. Tr 183-187, 194-198. Therefore, remand is necessary for the ALJ to consider Mrs. Kinder's testimony and the other statements provided by family members, and furthermore, to provide germane reasons if the ALJ decides to reject such testimony.

**B.**   **Remand is Necessary for the ALJ to Obtain Supplemental Vocational Evidence Regarding Plaintiff's Ability to Perform Other Work that Exists in Significant Numbers in the National Economy.**

The ALJ found, based on VE testimony and plaintiff's RFC, that plaintiff could not return to his past relevant work, but could perform other work existing in significant numbers in the national economy. Based upon the ALJ's hypothetical questions, the VE determined that such work would include positions as a cashier II, a ticket seller, or a sedentary assembler. Tr. 717-728. The Commissioner has observed that the DOT description for cashier II states that reaching is required "frequently" (defined as 1/3 to 2/3 of the time). *See* U.S. Dep't of Labor, DOT 211.467-010 (4th ed. 1991) *available at* Westlaw DICOT database. While the DOT descriptions for ticket seller and sedentary assembler require reaching "constantly" (defined as 2/3 or more of the time). Id. at 211.467-030 and 734.687-018. The Commissioner's brief correctly points out

17 - OPINION AND ORDER

that "reaching" is defined as "extending the hands and arms in any direction." SSR 85-15, *available at* 1985 WL 56857, *7 (1985). Def.'s Br. at 22. Therefore, there is a disconnect between the RFC as determined by the ALJ, which states that the plaintiff is limited to "intermittent . . . reaching above shoulder level" (Tr. 33), and the physical demands of the jobs that the VE has stated that plaintiff could perform, which require frequent or constant reaching that potentially includes over shoulder level reaching. While the VE states that the described jobs are "representative" of jobs that plaintiff would be able to perform, to satisfy the Commissioner's burden, the record needs to be further developed to include jobs that the plaintiff could actually perform given all of his RFC limitations. Tr. 723; *see* 20 C.F.R. § 404.1520(f).

      Because the record has not yet been fully developed for the above mentioned reasons, this court finds that further administrative proceedings would serve a useful purpose. I conclude that remand for an immediate award of benefits is not appropriate because outstanding issues remain unresolved. Thus I grant defendant's motion and remand this action to the Commissioner for further proceedings.

## CONCLUSION

Defendants motion to remand (#21) is GRANTED. The decision of the Commissioner denying benefits is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED this 12th day of December, 2005.

       /s/ Robert E. Jones
      ROBERT E. JONES
      U.S. District Judge